K.K. HALL, Circuit Judge:
 

 This is an action for the sale of certain real estate allegedly conveyed by David S. Davis (Davis) to his wife, Gloria B. Davis, in fraud of Davis’s creditors. The Federal Deposit Insurance Corporation (FDIC) appeals from an order of the district court granting summary judgment to Gloria Davis. We conclude that the district judge erred in granting summary judgment and, therefore, reverse the order and remand the case for trial.
 

 I.
 

 In 1973, Davis and Coachwood Investments, Inc., executed and delivered to American Bank & Trust Company a promissory note secured by a real estate mortgage. When American Bank & Trust Company closed the following year, the note and mortgage were purchased by the FDIC.
 

 Thereafter, in 1974, and again in 1978, Davis conveyed to his wife substantial parcels of real estate for nominal consideration. The FDIC subsequently brought an action in state court against Coachwood Investments, Inc., and Davis to recover on the note and to foreclose upon the mortgage. The FDIC obtained a deficiency judgment which it filed against Davis in Lexington County, South Carolina, on July 2, 1980.
 

 On August 27,1980, Davis filed for bankruptcy and a trustee in bankruptcy was
 
 *1084
 
 appointed. Although the judgment debt of Davis to the FDIC was listed in the bankruptcy schedules, the trustee in bankruptcy neither attacked the conveyances by Davis to his wife nor attempted to avoid the judgment lien of the FDIC. The case was closed and Davis was discharged in bankruptcy on November 13, 1980.
 

 The FDIC subsequently brought this action against Gloria Davis in federal district court to compel the judicial sale of the property Davis transferred to his wife, and to have the proceeds of this sale applied toward the judgment the FDIC had obtained against Davis. The district judge refused to allow the FDIC to attack Davis’s conveyances on the grounds that (1) the FDIC’s judgment lien had been acquired less than two months before Davis filed for bankruptcy, while Davis was insolvent, and was therefore voidable at the instance of the trustee in bankruptcy, and (2) no individual creditor could attack such conveyances independently of the trustee in bankruptcy. The district court granted summary judgment for Gloria Davis and the FDIC appeals.
 

 II.
 

 On appeal, the FDIC argues that the district judge erred in concluding that the FDIC could not attack the allegedly fraudulent conveyances. We agree and hold that, as a secured party with an una-voided lien, the FDIC had a right to attack the conveyances.
 

 Under § 547 of the Bankruptcy Reform Act of 1978
 
 [1]
 
 (the “Bankruptcy Code”),
 
 [2]
 
 the trustee may avoid as preferential any transfer of property of the debtor to a creditor on account of an antecedent debt which was made while the debtor was insolvent and made within ninety days before the date the petition was filed. 11 U.S.C. § 547(b).
 
 [3]
 
 The acquisition by a creditor of a lien on property of the debtor can be a preferential transfer under § 547. 11 U.S.C. § 101(40). Thus, by perfecting a judgment lien on July 2, 1980, the FDIC received a preferential transfer, because Davis filed his petition on August 27, 1980, fewer than ninety days after that date.
 
 [4]
 

 Preferences under § 547, however, are voidable, not void.
 
 Fischer v. Pauline Oil & Gas Co.,
 
 309 U.S. 294, 301-02, 60 S.Ct. 535, 538-39, 84 L.Ed. 764 (1940).
 
 [5]
 
 Consequently, the trustee must take affirmative steps in the bankruptcy court to set aside a preferential transfer. The trustee in Davis’s bankruptcy did not attack the FDIC’s judgment as a preference.
 

 In finding that the FDIC’s lien could still be avoided by the trustee, the district judge apparently assumed that a voidable lien remained voidable forever. To the contrary, the Bankruptcy Code specifically
 
 *1085
 
 states that a trustee may not commence an action under § 547 after the earlier of two years from the time he is appointed or from the time the case is closed or dismissed. 11 U.S.C. § 546(a). The bankruptcy case was closed on November 13, 1980, less than three months after Davis’s trustee was appointed. The trustee chose not to attack the FDIC’s lien before the case was closed and, therefore, would have no power to attack the lien now.
 
 [6]
 

 III.
 

 The FDIC further contends that the district judge erred in holding that under
 
 Glenny v. Langdon,
 
 98 U.S. 20, 25 L.Ed. 43 (1878), no individual creditor could attack an allegedly fraudulent conveyance independently of the trustee in bankruptcy. We agree.
 

 In
 
 Glenny,
 
 the Supreme Court held that the unsecured creditors of a bankrupt debt- or could not assert the rights granted a trustee under the bankruptcy law. This holding is inapplicable to the facts of the instant ease, as the FDIC is seeking to enforce a secured judgment lien which exists under state law independently of the trustee’s rights under bankruptcy law.
 

 Once a bankruptcy case has been closed, creditors having unavoided liens on fraudulently conveyed property can pursue their state law remedies independently of the trustee in bankruptcy.
 
 See Branch v. Human,
 
 215 Ga. 209, 109 S.E.2d 732 (1959) (a judgment lien is enforceable against property which the bankrupt debtor has fraudulently conveyed, even where the lien was acquired within four months of the debtor’s petition for bankruptcy, if the lien has not been avoided in the bankruptcy proceeding);
 
 Matney v. Combs,
 
 171 Va. 244, 198 5.E. 469 (1938) (a judgment creditor does not lose any of his rights to assert his lien if the trustee does not avoid a fraudulent conveyance). When the bankruptcy case was closed the FDIC had an unavoided lien which attached to the property. It was, therefore, free to attack a fraudulent conveyance of that property.
 

 IV.
 

 For the foregoing reasons, we reverse the order of the district court and remand the ease for trial.
 

 REVERSED.
 

 [1]
 

 . Pub.L. No. 95-598, 92 Stat. 2549 (codified at 11 U.S.C. §§ 1-1330).
 

 [2]
 

 . The Bankruptcy Code took effect on October 1, 1979, and replaced the existing provisions of the Bankruptcy Act of 1898. Davis filed for bankruptcy in August, 1980, and was granted a discharge in bankruptcy in November, 1980. His bankruptcy was, therefore, controlled by the provisions of the Bankruptcy Code. The district judge’s reliance on the former Bankruptcy Act was misplaced.
 

 [3]
 

 . Section 547(b) states in pertinent part:
 

 [T]he trustee may avoid any transfer of property of the debtor—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4)made—
 

 (A) on or within 90 days before the date of the filing of the petition....
 

 [4]
 

 . Pursuant to 11 U.S.C. § 547(b)(3) there would be a preference only if Davis was also insolvent on the date that the judgment lien was perfected. Although the record does not reflect that Davis was insolvent on that ’date, such a presumption may be created pursuant to 11 U.S.C. § 547(f), which states that a debtor is presumed to be insolvent on and during the 90 days immediately preceding the date of the filing of the petition.
 

 [5]
 

 . In
 
 Fischer,
 
 the Supreme Court held that judgment liens were merely voidable and not void under the Bankruptcy Act of 1898, even though the statute unequivocally declared such liens to be "null and void." There is no language in the Bankruptcy Code indicating that
 
 Fischer
 
 should be any less applicable under the new Code.
 

 [6]
 

 . The trustee made no attempt to attack the FDIC’s lien at any time during his two-year limitations period. To the contrary, in a letter to counsel for the FDIC, dated December 15, 1980, he stated:
 

 [A]ny recovery by the trustee [from the property conveyed] would eventually end up in the hands of your client or the secured creditors after deducting the legal and administrative costs of the trustee. This procedure would seem to me to be an unnecessary expense on the possible funds available and I would therefore think that your best procedure would be to refrain from re-opening the case and ... to proceed against Mr. Davis in the state court on behalf of your client.